IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

ROCK HILL DIVISION

| | |
|---|---|
| NETTIE MAE WHITAKER, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 0:05-2708-MJP-BM |
| v. ) | |
| ) | |
| CHESTER-LANCASTER DSN, ) | **REPORT AND RECOMMENDATION** |
| ) | |
| ) | |
| Defendants. ) | |
| _____) | |

      This action has been filed by the Plaintiff, pro se, asserting claims for breach of contract and for race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et. seq..[1]  A stipulation of dismissal with prejudice as to the Defendant Jay Altman was entered by the parties on February 27, 2006.  Therefore, the only Defendant remaining in this action is the Chester/Lancaster Disabilities and Special Needs Board ("Board").

      The Defendant Board filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on April 10, 2006. As the Plaintiff is proceeding pro se, a Roseboro order was entered by the Court on April 18, 2006, advising Plaintiff of the importance of a motion for summary judgment and of the need for her to file an adequate response. Plaintiff was specifically advised that if she failed to respond adequately, the Defendant's motion may be granted, thereby ending her case.

---

[1] These are the two causes of action referenced by Plaintiff in her Complaint. However, the South Carolina Human Affairs Commission (SCHAC) administrative charge attached as an exhibit to Plaintiff's Complaint has "age" and "disability" checked as being her complaints, although the actual text of Plaintiff's administrative charge also includes complaints about race discrimination.

1



However, notwithstanding the specific warning and instructions as set forth in the Court's <u>Roseboro</u> order, Plaintiff has failed to file any response to the Defendant's motion for summary judgment, which is now before the Court for disposition.[2]

## **Background and Evidence**[3]

Plaintiff alleges in her verified Complaint[4] that she was out of work in 2000 with a back problem, but that when her doctor told her she could go back to work the Defendant's Executive Director (Jay Altman) was not going to let her return. Plaintiff alleges that after she got Vocational Rehabilitation involved, she was "forced to sign a contract" after Nikki Bramlett told her that the only way she could return was to sign the contract. Plaintiff alleges that this "contract" assigned her to a particular "workshop". Plaintiff complains, however, that while her contract stated she would not be left alone with clients, she was nevertheless put in "harms way" by being placed with "clients as big as me." Plaintiff also complains that in Thanksgiving 2003 she was told by Fran Knight to drive a van load of clients, which involved loading and reloading them into the van, even though this was a violation of her contract since she was not supposed to be lifting clients due to her disability.

---

[2]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(e) and (g), D.S.C. The Defendant has filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

[3]The facts and evidence are considered and discussed hereinabove in the light most favorable to the Plaintiff, the party opposing summary judgment. <u>Pittman v. Nelms</u>, 87 F.3d 116, 118 (4th Cir. 1996).

[4]Even though Plaintiff has not filed a response to the motion for summary judgment, in this Circuit verified complaints by <u>pro se</u> litigants are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. <u>Williams v. Griffin</u>, 952 F.2d 820, 823 (4th Cir. 1991). Plaintiff has filed a verified Complaint. Therefore, the undersigned has considered the factual allegations set forth in the verified Complaint in issuing a recommendation in this case.



As for her race discrimination claim, Plaintiff alleges that from 2001 to 2004 she signed up for at least eight (8) posted jobs, but that each time an African-American was hired for the position (Plaintiff is white). Plaintiff alleges that she discussed this matter with Fran Knight, who in turn discussed it with Nikki Bramlett, but that nothing was done. Plaintiff alleges that, while she was told she did not get any of these positions because of her poor work record, Nikki Bramlett praises her work in her personnel file.

Finally, Plaintiff alleges that she was unlawfully terminated after she witnessed verbal abuse and reported it to nurse Michelle Duncan. Plaintiff alleges she was told that Duncan was not the person to whom she was supposed to have reported, because the employee handbook provided that such reports should be made to a supervisor. However, Plaintiff alleges that the cited page of the handbook was rewritten "a few days after I was fired". Plaintiff also complains that she was told afterward that Renee Phillips was acting supervisor, and that she should have talked to Phillips, but that she was unaware that Phillips was an acting supervisor. Plaintiff seeks reinstatement to her job, as well as monetary damages.

Attached to Plaintiff's Complaint is a copy of the document Plaintiff contends is the "contract" she was required to sign, as well as copies of her administrative charge documents, including her notice of right to sue. The purported "contract", which bears a date of March 6, 2001 and is signed by the Plaintiff, Nikki Bramlett, and Fran Knight, reads as follows:

> The employee will be assigned to the developmental group. She will be responsible for maintaining the health, safety and accountability of this group, as well as performing all the duties in the job description. She will implement the goals of the individuals and monitor any behavior plans, completing the necessary paperwork. Employee will not be left in the facility alone, so she will have assistance should an individual fall or need to be helped up. Employee will have staff assistance in taking

3



> individuals to the restroom. This job will not require any bending, stooping, squatting or lifting over 25 pounds. Should the employee choose to engage in these activities, it will be done so at her own risk.

See generally, Verified Complaint, with attached Exhibits.

In support of summary judgment in the case, Jay Altman has submitted an affidavit wherein he attests that he is the Executive Director of the Defendant. Altman attests that the Defendant provides care and service to South Carolinians who suffer from mental retardation and other mental and physical impairments that limit their ability to function independently, with approximately 98% of the Defendant's funding being derived from the South Carolina Department of Disabilities and Special Needs. Altman attests that, as a condition of this funding, the Defendant is required to follow the policies, rules, regulations and directives issued by the Department. Altman further attests that the Defendants' Board of Directors is appointed by the Governor, and that insurance is provided to the Defendant through the Insurance Reserve Fund of the South Carolina State Budget and Control Board.

Altman attests that clients of the Defendant are separated into different groups depending on their relative skills and abilities, with the "developmental group" consisting of individuals who suffer from severe mental retardation and have trouble performing basic life functions independently, and the "workshop group" consisting of individuals with more advanced physical and psychological skills. Altman attests that the duties associated with supervising these two groups, however, are generally the same.

Altman attests that the Defendant had an opening for a direct support staff position at the Nancy McConnell Home in late 2003, and that Mary Hazel was selected for this position. Hazel is an African American who had already been performing the same duties on a different shift



at the Nancy McConnell Home for a year and a half, and was therefore familiar with the clients, as they were with her. Altman attests that Hazel also had two years experience working in a residential home, and that her selection merely required a transfer from her previous position to the third shift on weekends. See generally, Altman Affidavit. The Defendant has also submitted excerpts from Plaintiff's deposition, which are discussed more fully hereinbelow.

As previously noted, Plaintiff has not filed any additional material with the Court, nor has she set forth any arguments in opposition to summary judgment in this case.

### **Discussion**

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial." Rule 56(e), Fed.R.Civ.P. Further, while the Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990). Here, after careful consideration and review of the evidence and arguments presented, the undersigned finds and concludes that the Defendant is entitled to summary judgment in this case.

5



**Race Discrimination Claim**

With regard to Plaintiff's race discrimination claim, the evidence presented to this Court shows that, of the eight positions Plaintiff alleges she applied for which were awarded to African Americans, only one of these positions is properly before this Court for review. Since South Carolina is a "deferral state", in order to be able to pursue a discrimination claim Plaintiff had to file her administrative charge within three hundred (300) days of the alleged discriminatory act at issue, and a failure by her to do so bars her from pursuing a Title VII lawsuit in this Court with respect to any alleged discriminatory act which falls outside of this three hundred (300) day period. United Black Firefighters of Norfolk v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979); Mickel v. South Carolina State Employment Serv., 377 F.2d 239, 242 (4th Cir. 1967); see National RR Passenger Corp. v. Morgan, 536 U.S. 101, 110 (2002). Plaintiff's administrative charge was filed on August 13, 2004; therefore, any position for which she applied prior to October 18, 2003 (300 days before she filed her charge) is time barred from consideration by this Court.[5]

According to Plaintiff's testimony at her deposition, the only position she applied for

---

[5] A claimant may in some circumstances include claims beyond this three hundred (300) day period where the Defendant's conduct is deemed to be a "continuing violation." However, under the applicable caselaw, promotions are separate and distinct acts for purposes of a Title VII claim, and timely promotion claims may not therefore be considered as part of a "continuing violation" together with any prior (and untimely) allegedly discriminatory promotion decisions which involved the same claimant. See Morgan, 536 U.S. at 117 [finding that "discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice'," and prior discrete discriminatory acts which are not filed within the 300 day time limit "are untimely filed and no longer actionable."]; Williams v. Giant Food, Inc., 370 F.3d 423, 429 (4th Cir. 2004) [continuing violation doctrine does not apply to a failure to promote claim, as a promotion decision is a discreet act of discrimination]; cf. Huckabay v. Moore, 142 F.3d 233, 239 (5th Cir. 1998) [distinguishing applicability of the continuing violation theory to hostile work environment claims, for which it may be used, from other types of claims, such as failure to promote].

6



during the requisite three hundred (300) day time period was the direct support staff job at the Nancy McConnell home, which she applied for on November 13, 2003. Plaintiff's Deposition, pp. 42-48; see also Defendant's Exhibit 10. However, that job required physical demands in excess of those possessed by the Plaintiff because of her back problems. Plaintiff's Deposition, pp. 27-29, 49-50; see also Defendant's Exhibits 3 & 11. Therefore, since by Plaintiff's own testimony she was not qualified for the position at issue, she has failed to present any evidence to establish a prima facie case of discrimination. See Carter v. Ball, 33 F.3d 450, 458 (4th Cir. 1994) [In order to establish a prima facie case of discriminatory refusal to promote, Plaintiff must show that she was qualified for the position.]; Amirmokri v. Baltimore Gas & Elec. Co., 60 F.3d 1126, 1129 (4th Cir. 1995).

Further, even if there was sufficient evidence to establish a prima facie case, Plaintiff has also failed to provide any evidence to show that the Defendant's decision to select Mary Hazel for the direct support staff position was pretextual. To make a demonstration of pretext, Plaintiff must show that "but for" her employer's discriminatory intent, she would not have suffered the adverse employment action. EEOC v. Clay Printing Co., 955 F.2d 936, 941 (4th Cir. 1991) [ADEA case]; Conkwright v. Westinghouse, 933 F.2d 231, 234 (4th Cir. 1991). "Direct or indirect evidence of discriminatory motive may do, but 'the evidence as a whole . . . must be sufficient for a reasonable fact-finder to infer that the employer's decision was motivated by [race animus].'" LeBlanc v. Great American Insurance Co., 6 F.3d 836, 843 (1st Cir. 1993)(citing Goldman v. First Nat'l Bank, 985 F.2d 1113, 1117 (1st Cir. 1993)(quoting Connell v. Bank of Boston, 924 F.2d 1169, 1172, n. 3 (1st Cir. 1991), cert. denied, 111 S.Ct. 2828 (1991)); see Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 141-143 (2000). Plaintiff has presented no such evidence. To the contrary, the evidence shows that Hazel had already been performing the same duties at the Nancy McConnell

7



Home for a year and a half, albeit on a different shift, and also had two years experience working in a residential home, which Plaintiff did not have. Plaintiff's Deposition, pp. 9-11, 19-21; Defendant's Exhibit 12; Altman Affidavit. See Matvia v. Baldhead Island Management, Inc., 259 F.3d 261, 271 (4th Cir. 2001) [Superior experience constitutes a legitimate, non-discriminatory basis for the selection of another candidate]; Gairola v. Virginia Dep't of General Servs., 753 F.2d 1281, 1287 (4th Cir. 1985) [Under Title VII, the burden in a failure to promote case is on the Plaintiff to establish that she was better qualified for the position sought].

The undersigned can discern no discriminatory animus in this evidence. Plaintiff's Title VII race discrimination claim is without merit, and should be dismissed.

**State Law Claims**

With respect to Plaintiff's state law breach of contract claims, Defendant argues that, as a state agency, it cannot be sued in this Court by the Plaintiff for breach of contract based on Eleventh Amendment immunity. Defendant asserts that it is an agency or "arm of the State" because it is established and regulated by the State, and receives most of its funding from the State. See S.C.Code Ann. §§ 44-20-375(D) and 44-20-385(1); see also Altman Affidavit; Hedberg v. Darlington County Disabilities and Special Needs Board, No. 95-3049, 1997 WL 787164, **2 (4th Cir. 1997) [Darlington County Disabilities and Special Needs Board entitled to Eleventh Amendment immunity]; cf. Smith v. School District of Greenville County, 324 F.Supp.2d 786, 796 (D.S.C. 2004).

Plaintiff has presented no evidence or argument to contest this issue. Therefore, as the Defendant is entitled to Eleventh Amendment immunity, Plaintiff's breach of contract and discharge claims must be dismissed. Board of Trustees of University of Alabama v. Garrett, 531 U.S. 356, 363 (2001); Mt. Healthy City School Dist. Bd. of Educ'n v. Doyle, 429 U.S. 274, 280 (1977);

8



Regents of the University of California v. Doe, 519 U.S. 425, 429 (1997).

## Conclusion

Based on the foregoing, it is recommended that the Defendant's motion for summary judgment with respect to Plaintiff's race discrimination claim be **granted**, and that that claim be **dismissed** with prejudice. With respect to Plaintiff's remaining state law claims, it is recommended that these claims be **dismissed**, without prejudice, due to the Defendant's Eleventh Amendment immunity from suit in this Court.

The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

Columbia, South Carolina

September 19, 2006



9

**Notice of Right to File Objections to Magistrate Judge's Report and Recommendation**
**&**
**The Serious Consequences of a Failure to Do So**

The parties are hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within **ten (10) days** of the date of its filing.  28 U.S.C. § 636 and Fed. R. Civ. P. 72(b).  The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail.  Fed. R. Civ. P. 6.  Based thereon, this Report and Recommendation, any objections thereto, and the case file will be **delivered to a United States District Judge** fourteen (14) days after this Report and Recommendation is filed.  Advance Coating Technology, Inc. v. LEP Chemical, Ltd., 142 F.R.D. 91, 94 & n. 3 (S.D.N.Y. 1992).  A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge.  See Mathews v. Weber, 423 U.S. 261, 270-271 (1976); and Estrada v. Witkowski, 816 F. Supp. 408, 410 (D.S.C. 1993).

During the ten-day period, but not thereafter, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he wishes the United States District Judge to consider any objections.  **Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections.**  Failure to file written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge.  See United States v. Schronce, 727 F.2d 91, 94 & n. 4 (4th Cir.), *cert. denied*, Schronce v. United States, 467 U.S. 1208 (1984); and Wright v. Collins, 766 F.2d 841, 845-47 & nn. 1-3 (4th Cir. 1985).  Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he did not object.  In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues.  Howard v. Secretary of HHS, 932 F.2d 505, 508-509 (6th Cir. 1991).  See also Praylow v. Martin, 761 F.2d 179, 180 n. 1 (4th Cir.)(party precluded from raising on appeal factual issue to which it did not object in the district court), *cert. denied*, 474 U.S. 1009 (1985).  In Howard, supra, the Court stated that general, non-specific objections are *not* sufficient:

> **A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object.  The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless.  *** This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act.  ***  We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.**

*Accord* Lockert v. Faulkner, 843 F.2d 1015, 1017-19 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> **Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review.  ***  A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.**

See also Branch v. Martin, 886 F.2d 1043, 1046 (8th Cir. 1989)("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and Goney v. Clark, 749 F.2d 5, 7 n. 1 (3rd Cir. 1984)("plaintiff's objections lacked the specificity to trigger *de novo* review").  This notice, hereby, apprises the parties of the consequences of a failure to file specific, written objections.  See Wright, supra,; and Small v. Secretary of HHS, 892 F.2d 15, 16 (2nd Cir. 1989).  Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing addressed as follows:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

10

